

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER VOPATEK,<br><br>                              Plaintiff,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>                              Defendant. | Case No.:  23-cv-01221-BAS-JLB<br><br>**[REDACTED] ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DEFENDANT USAA CASUALTY INSURANCE COMPANY'S RESPONSES TO WRITTEN DISCOVERY**<br><br>**[ECF No. 50]** |

Before the Court is a Motion to Compel filed by Plaintiff Christopher Vopatek ("Plaintiff").  (ECF No. 50.)  Plaintiff moves to compel Defendant USAA Casualty Insurance Company ("Defendant" or "USAA") to respond to Request for Production ("RFP") Nos. 21 and 22 and Plaintiff's Interrogatory Nos. 11 and 12.  (*Id.* at 2.)  Defendant filed an opposition (ECF No. 53), and Plaintiff filed a reply with an expert declaration (ECF No. 55).  Defendant objected to Plaintiff's expert's declaration (ECF No. 56) and filed a supplemental declaration in response (ECF No. 63).  Plaintiff thereafter objected to Defendant's supplemental declaration.  (ECF No. 64.)

1

On July 18, 2025, the Court held a hearing on the Motion to Compel. (ECF No. 65.) Following the hearing, the Court ordered Defendant to supplement its opposition and gave Plaintiff an opportunity to respond to the legal authority presented by Defendant at the hearing. (ECF No. 67.) Plaintiff thereafter filed a reply addressing Defendant's cited legal authority (ECF No. 72), and Defendant filed three supplemental declarations (ECF Nos. 78–80, 83). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel.

## I.    BACKGROUND

Plaintiff commenced this action against USAA on June 30, 2023. (ECF No. 1 ("Compl.").) Plaintiff had an automobile insurance policy with USAA, Policy No. 00951 78 46C 7103 3, effective September 19, 2017, through September 19, 2020 (the "Policy"). (Compl. ¶ 7.) On April 4, 2020, Plaintiff was driving his insured vehicle while working for Uber Eats deliveries. (*Id.* ¶ 13.) After logging out of his Uber application for the night, Plaintiff was involved in a head-on motor vehicle accident with an intoxicated driver wherein he suffered severe personal injuries and property damage. (*Id.* ¶¶ 14–17.) The other driver was at fault. (*Id.* ¶¶ 18–19.) The at-fault driver's policy limit was $15,000 per person and $30,000 per accident. (*Id.* ¶ 36.) The at-fault driver's insurer tendered its policy limits of $15,000 to Plaintiff. (*Id.* ¶ 21.)

Plaintiff thereafter submitted a claim to USAA seeking uninsured motorist/underinsured motorist ("UM/UIM") coverage on the ground he suffered bodily injury and property damage due to the sole fault of an underinsured motorist. (*Id.* ¶ 24.) The UM/UIM limits of Plaintiff's Policy were $300,000.00 per person and $500,000.00 per accident. (*Id.* ¶¶ 7, 23.) USAA denied coverage on the ground that the Policy does not pay for a loss to a covered auto "which occurs while it is being used to carry persons for a fee." (*Id.* ¶¶ 25–26.) Plaintiff thereafter renewed his demand, which was denied again because USAA claimed, without producing evidence, that Plaintiff "was confirmed to be in active status on his ride share application at the time of the accident." (*Id.* ¶¶ 27–29.) Plaintiff was not logged in to the Uber Eats application at the time of the accident. (*Id.* ¶¶

29–32.)  Plaintiff brings causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, and declaratory relief.  (*Id.* at 9–14.)

On February 26, 2024, the Honorable Roger T. Benitez granted the parties' joint motion to stay the action pending the outcome of mandatory UIM arbitration.  (ECF No. 25.)  During the stay, a settlement was reached as to the parties' dispute regarding the amount of UIM benefits owed to Plaintiff.  (ECF No. 31 at 2.)  On October 1, 2024, the parties informed the Court that their settlement of the underlying UIM claim had been finalized.  (ECF No. 33 at 2.)  The Honorable Cynthia Bashant lifted the stay on October 7, 2024, and issued a new schedule.  (ECF No. 35.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b), a party is entitled to seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible to be discoverable.  *Id.*

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)."  *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021) (quoting *Bryant v. Ochoa*, No. 07-CV-00200-JM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009)).  "District courts have broad discretion in determining relevancy for discovery purposes."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).  "Once the propounding party establishes that the request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'"  *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009)).  However,

a court must—either on motion or *sua sponte*—"limit the frequency or extent" of otherwise permissible discovery if the court finds, *inter alia*, the request "unreasonably cumulative or duplicative" or the discovery sought is obtainable from a "more convenient, less burdensome, or less expensive" source.  Fed. R. Civ. P. 26(b)(2)(C)(i).

## III.    DISCUSSION

### A.    Relevant Background

In his motion, Plaintiff claims that, in the days after the April 4, 2020 accident, USAA never asked him any questions about his ride sharing activity.  (ECF No. 50 at 4.) After the initial denial on May 19, 2020, Plaintiff's counsel immediately disputed the denial, reiterating that Plaintiff was not logged in to the Uber Eats application at the time of the accident and that Plaintiff's counsel was told USAA had not spoken with Uber about the issue.  (*Id.*)  Counsel asked for all evidence on which USAA was basing its denial.  (*Id.*) USAA provided an April 9, 2020 email from Uber to an adjuster for Progressive Insurance ("Progressive"), Uber's group insurance carrier for its drivers, which asserted, "Our data confirms the driver was in P1/Available on the reported loss street, Gopher Canyon Rd near the reported time of loss."  (*Id.* at 5; ECF No. 50-1 at 35; *see also* ECF No. 53 at 11.) Plaintiff claims that there was "no discussion regarding the precise times, locations, and app status of Plaintiff in relation to the time of loss by anyone," and that USAA did not receive this April 9 email until a day after it issued its denial on May 19.  (*Id.* at 5.)  Plaintiff further claims that USAA never contacted Uber directly.  (*Id.*)  Plaintiff asserts that it was only after he was forced to file this bad faith action that USAA finally sought the driver activity log from Uber.  (*Id.*)  The log ultimately obtained from Uber showed that Plaintiff was not logged in at the time of the accident and coverage was in fact owed.  (*Id.*)

USAA disputes Plaintiff's version of events.  USAA claims that two days after the April 4 accident, Plaintiff provided a recorded statement to USAA, but this statement was not used in determining whether to deny coverage.  (ECF Nos. 53 at 3–4; 53-1 at 67.)  On April 8, an adjuster from Progressive contacted USAA and advised the company that a separate claim had been opened with Progressive on Plaintiff's behalf because he was

driving for Uber Eats at the time of the accident.  (ECF No. 53 at 4; *see also* ECF No. 50-1 at 21.)  On April 10, USAA called Plaintiff to ask if he was driving for Uber Eats at the time of the accident.  (*Id.*)  Plaintiff stated that he had finished working for Uber Eats and was on his way to a friend's house when the accident happened.  (*Id.*; *see also* ECF No. 53-1 at 60.)  Plaintiff thought he was "clocked out" out of Uber Eats, but while he was sitting at the side of the road after the accident, he received multiple delivery assignments, and even at the hospital, he continued to receive calls regarding deliveries.  (*Id.*; *see also* ECF No. 53-1 at 60.)

Progressive advised USAA on May 8 that Plaintiff was classified by Uber as being in Phase 1 (or Period 1) at the time of the accident, meaning his Uber Eats application was turned on and waiting for a rider or delivery notification.  (*Id.*; *see also* ECF No. 53-1 at 63.)  Pursuant to the rideshare provisions of the Policy, and based upon Plaintiff's, Progressive's, and Uber's statements to USAA, USAA claims that it "believed that Plaintiff's claim was not covered," and denied coverage.  (*Id.*; *see also* ECF No. 53-1 at 67.)  After receiving more information, including the "activity log with GPS coordinates and sign on/sign off times" on October 20, 2023, via subpoena, USAA determined that Plaintiff "was not in an active or available status on the application at the time of the accident."  (ECF No. 53-1 at 69–76.)  On January 9, 2024, USAA accepted Plaintiff's claim.  (*Id.* at 75–76.)

## B.    Requests at Issue

Plaintiff seeks to compel responses to RFP Nos. 21 and 22 and Interrogatory Nos. 11 and 12.  (ECF No. 50 at 5–6.)  The following RFPs, interrogatories, and responses are at issue:

**RFP No. 21:**

Produce all DOCUMENTS that IDENTIFY any of YOUR insured who, in the past five (5) years, have submitted claims to YOU for Uninsured Motorist/Underinsured Motorist Coverage which required YOU to determine

whether YOUR insured was engaged in ride sharing activity in conjunction with a Transportation Network Company.

For purposes of this request, 'ride sharing activity" means use of the covered auto to provide prearranged transportation of persons or property in conjunction with a "Transportation Network Company."

For purposes of this request, "Transportation Network Company" means a person or entity that provides prearranged transportation services for compensation using an online-enabled application or platform to connect clients with drivers who use their personal vehicles to provide the requested transportation, such as but not limited to Uber or Lyft.

**Response to RFP No. 21:**

Responding Party objects to this request on the grounds that it is overbroad as to scope and time.

Responding Party objects on the grounds that this request is unreasonably burdensome and time consuming and that it is intended to harass and annoy Responding Party and that identifying material potentially responsive to this request would take a manual, file-by-file, document-by-document review.

Responding Party objects to this request on the grounds that, as phrased, it could require the production of documents and materials that contain trade secrets, the privacy of third-party individuals and other confidential, proprietary information pertaining to the internal operations of Responding Party and are, therefore, protected from discovery.

Responding Party objects to the extent this request is not reasonably calculated to lead to the discovery of relevant evidence.

Subject to, and without waiving the aforesaid objections, Responding Party responds as follows:

Responding Party designates the non-privileged portions of the Claim File, Bates numbered VOPATEK_CF_0001-1717, for ease of reference, along with the corresponding privilege log.

Subject to the Stipulated Protective Order as filed by the Court on February 25, 2025 [Dkt. 43.] Responding party refers Propounding Party to the confidential Knowledge Center articles identified as Bates Numbers, Bates numbers VOPATEK_CONFIDENTIAL_0001-0372.

Responding Party contends that it followed policies and procedures when it handled the subject claim and thus any related third-party claims are not relevant under Federal Rules of Evidence 401 and 403.

**Interrogatory No. 11:**

IDENTIFY any and all of YOUR insureds who, in the past five (5) years, have submitted claims to YOU for Uninsured Motorist/Underinsured Motorist Coverage which required YOU to determine whether YOUR insured was engaged in ride sharing activity in conjunction with a Transportation Network Company.

For purposes of this interrogatory, "ride sharing activity" means use of the covered auto to provide prearranged transportation of persons or property in conjunction with a "Transportation Network Company."

For purposes of this interrogatory, "Transportation Network Company" means a person or entity that provides prearranged transportation services for compensation using an online-enabled application or platform to connect clients with drivers who use their personal vehicles to provide the requested transportation, such as but not limited to Uber or Lyft.

**Response to Interrogatory No. 11:**

Responding Party objects to this request on the grounds that it is vague and ambiguous in that it cannot be determined what is intended by "any and all complaints received by YOU from YOUR insureds in the past five (5) years claiming YOU failed to investigate a claim RELATING TO whether YOUR insured was engaged in ride sharing activity in conjunction with a Transportation Network Company, including but not limited to letters, emails, demands, claims, lawsuits, and demands for arbitration" as used in the subject request.

Responding Party objects to this request on the grounds that it is overbroad as to scope and time and geographic region.

Responding Party objects on the grounds that this request is unreasonably burdensome and time consuming and that it is intended to harass and annoy Responding Party and that identifying material potentially responsive to this request would take a manual, file-by-file, document-by-document review.

Responding Party objects to this request on the grounds it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party objects to the extent this request seeks private information of unrelated third parties, including confidential claims information, medical information or records and similarly protected information that is not discoverable pursuant to *Colonial Life* and its progeny.

**RFP No. 22:**

Produce any and all DOCUMENTS EVIDENCING complaints, letters, emails, demands, claims, lawsuits, and/or demands for arbitration received by YOU from YOUR insured in the past five (5) years claiming YOU failed to investigate a claim RELATING TO whether YOUR insured was engaged in ride sharing activity in conjunction with a Transportation Network Company.

For purposes of this request, "ride sharing activity" means use of the covered auto to provide prearranged transportation of persons or property in conjunction with a "Transportation Network Company."

For purposes of this request, "Transportation Network Company" means a person or entity that provides prearranged transportation services for compensation using an online-enabled application or platform to connect clients with drivers who use their personal vehicles to provide the requested transportation, such as but not limited to Uber or Lyft.

**Response to RFP No. 22:**

Responding Party objects to this request on the grounds that it is overbroad as to scope and time.

Responding Party objects on the grounds that this request is unreasonably burdensome and time consuming and that it is intended to harass and annoy Responding Party and that identifying material potentially responsive to this request would take a manual, file-by-file, document-by-document review.

Responding Party objects to this request on the grounds that, as phrased, it could require the production of documents and materials that contain trade secrets, the privacy of third-parties, and other confidential, proprietary information pertaining to the internal operations of Responding Party and are, therefore, protected from discovery.

Responding Party objects to the extent this request is not reasonably calculated to lead to the discovery of relevant evidence.

Subject to, and without waiving the aforesaid objections, Responding Party responds as follows:

Responding Party designates the non-privileged portions of the Claim File, Bates numbered VOPATEK_CF_0001-1717, for ease of reference, along with the corresponding privilege log.

Subject to the Stipulated Protective Order as filed by the Court on February 25, 2025 [Dkt. 43.] Responding party refers Propounding Party to the confidential Knowledge Center articles identified as Bates Numbers, Bates numbers VOPATEK_CONFIDENTIAL_0001-0372.

Responding Party contends that it followed policies and procedures when it handled the subject claim and thus any related third-party claims are not relevant under Federal Rules of Evidence 401 and 403.

Discovery is continuing. Responding Party reserves the right to amend or supplement this response.

**Interrogatory No. 12:**

IDENTIFY any and all complaints received by YOU from YOUR insureds in the past five (5) years claiming YOU failed to investigate a claim RELATING TO whether YOUR insured was engaged in ride sharing activity in conjunction with a Transportation Network Company, including but not limited to letters, emails, demands, claims, lawsuits, and demands for arbitration.

For purposes of this interrogatory, "ride sharing activity" means use of the covered auto to provide prearranged transportation of persons or property in conjunction with a "Transportation Network Company."

For purposes of this interrogatory, "Transportation Network Company" means a person or entity that provides prearranged transportation services for compensation using an online-enabled application or platform to connect clients with drivers who use their personal vehicles to provide the requested transportation, such as but not limited to Uber or Lyft.

**Response to Interrogatory No. 12:**

Responding Party objects to this request on the grounds that it is vague and ambiguous in that it cannot be determined what is intended by "any and all complaints received by YOU from YOUR insureds in the past five (5) years claiming YOU failed to investigate a claim RELATING TO whether YOUR insured was engaged in ride sharing activity in conjunction with a Transportation Network Company, including but not limited to letters, emails, demands, claims, lawsuits, and demands for arbitration" as used in the subject request.

Responding Party objects to this request on the grounds that it is overbroad as to scope and time and geographic region.

Responding Party objects on the grounds that this request is unreasonably burdensome and time consuming and that it is intended to harass and annoy Responding Party and that identifying material potentially responsive to this request would take a manual, file-by-file, document-by-document review.

Responding Party objects to this request on the grounds it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party objects to the extent this request seeks private information of unrelated third parties, including confidential claims information, medical information or records and similarly protected information that is not discoverable pursuant to *Colonial Life* and its progeny.

(ECF No. 50-1 at 41–53.)

## C.    Analysis

By means of the foregoing discovery requests, Plaintiff seeks pattern and practice discovery relating to USAA insureds seeking UM/UIM coverage where ride sharing activity was disputed, as well as complaints from insureds that USAA did not properly investigate ride sharing activity. (ECF No. 50 at 2.) Plaintiff believes that the evidence will show that USAA "regularly failed to obtain the driver log when investigating disputed ride sharing activity[,]" although required to do so by USAA's internal guidelines and industry standards. (*Id.* at 2–4.) With this information, Plaintiff argues that he can establish bad faith and support punitive damages by way of pattern and practice. (*Id.* at 2.) Plaintiff

points to his own inability to obtain the log from Uber, along with USAA's statement that "Uber reps do not take direct contact . . . [t]hey are very difficult to reach," and the fact USAA never contacted Uber once while investigating Plaintiff's claim, as indicators that it is "highly likely, if not certain, that USAA routinely does not obtain the driver log where ride sharing activity is disputed and wrongfully shifts the burden and duty to investigate to its insureds." (*Id.* at 2–3.)

In his Complaint, Plaintiff brings a cause of action for breach of the implied covenant of good faith and fair dealing and seeks punitive damages. (Compl. ¶¶ 54–66.) To support his breach of the implied covenant of good faith and fair dealing cause of action, Plaintiff alleges that USAA breached its obligation to act fairly and in good faith by, *inter alia*, "[u]nreasonably asserting Plaintiff was logged in to the UBER application at the time of the accident while lacking any evidence of such fact," "[u]nreasonably relying on unverified and unconfirmed statements from third parties to exclude coverage," and "[u]nreasonably, intentionally and willfully, with full knowledge and the intent to deceive and deprive Plaintiff of benefits owed pursuant to the Policy, fraudulently fabricating and manufacturing facts without any supporting evidence in order to deny coverage." (*Id.* ¶ 60(a)–(c).) Plaintiff further alleges that USAA breached its obligation to act fairly and in good faith by "[e]mbarking on a course of conduct and pattern and practice wherein Defendant would fail to provide any legal support for its positions regarding application of exclusions to the claim and/or fail to acknowledge coverage owed," and by "[p]ursuing such a course of conduct and pattern and practice in violation of the terms of the Policy and California law with the knowledge, understanding, consent and approval of Defendant's managing officers, directors, agents and employees." (*Id.*)

California law "implies in every contract, including insurance policies, a covenant of good faith and fair dealing." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007), *as modified* (Dec. 19, 2007). "Therefore, when an insurer unreasonably and in bad faith withholds payment on a claim of its insured, it is subject to liability in tort." *Downey Sav. & Loan Assn. v. Ohio Cas. Ins. Co.*, 189 Cal. App. 3d 1072, 1096 (1987). "An insurer

may also breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim." *McCoy v. Progressive W. Ins. Co.*, 171 Cal. App. 4th 785, 792–93 (2009) (citation omitted).  Under this implied promise, in determining whether to settle a claim, the insurer must give "at least as much consideration to the welfare of its insured as it gives to its own interests." *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979).

Plaintiff relies on *Colonial Life & Accident Ins. Co. v. Superior Court*, 31 Cal. 3d 785 (1982), to support his contention that discovery regarding other claims handled by USAA is relevant to his bad faith and punitive damages claims.  (ECF No. 50 at 2, 5–6, 7–9.)  Indeed, a bad faith claim may be established "by showing either that the acts that harmed [the plaintiff] were knowingly committed or were engaged in with such frequency as to indicate a general business practice." *Colonial Life*, 31 Cal. 3d at 791; *accord Shenon v. New York Life Ins. Co.*, No. 2:18 CV 00240, 2021 WL 4804053, at *3 n.2 (C.D. Cal. Oct. 14, 2021).  Moreover, "[o]ther instances of alleged unfair settlement practices may also be highly relevant to [a] plaintiff's claim for punitive damages." *Colonial Life*, 31 Cal. 3d at 791.  Thus, "the elements of punitive damages may be suggested by a pattern of unfair practices." *Id.* at 792.  Accordingly, "[d]iscovery aimed at determining the frequency of alleged unfair settlement practices is . . . likely to produce evidence directly relevant to [a bad faith] action." *Id.* at 791.

"Although *Colonial Life* is not binding in discovery disputes in federal court, it provides helpful guidance about relevance in connection with allegations of an insurer's breach of the covenant of good faith and fair dealing under California law." *Kahlenberg v. Bamboo IDE8 Ins. Servs., LLC*, No. 2:20-cv-06805-FLA-PDx, 2021 WL 8693114, at *3 (C.D. Cal. May 19, 2021).  Indeed, "*Colonial Life* . . . has been cited by California state and federal courts for the idea that an insurer's handling of other claims is relevant to punitive damages and common law 'bad faith' claims." *Van Duyn v. Am. Sec. Ins. Co.*, No. CV 08-5748-GW(CTX), 2009 WL 10672575, at *3 (C.D. Cal. Apr. 14, 2009); *see, e.g.*, *Moore v. American United Life Ins. Co.*, 150 Cal. App. 3d 610 (1984) (noting

information regarding non-party insureds' settlement attempts is relevant to common law bad faith claim); *J & M Assocs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, PA, No. 06-CV-0903-W (JMA), 2008 WL 638137, at *4–5 (S.D. Cal. Mar. 4, 2008) (finding that *Colonial Life* applies whether bad faith is alleged under a statute or under a common law theory).

Here, USAA argues that the "only claim that matters and is discoverable in this case . . . is *Plaintiff's own claim*" and Plaintiff's reliance on *Colonial Life* is simply a "fishing expedition." (ECF No. 53 at 2.) USAA claims this action is "nothing more than a genuine dispute as to coverage: the reasonableness of what USAA [] knew at the time of the coverage declination." (*Id.* at 5.) USAA asserts that it "reasonably believed—and was reasonably informed—that [Plaintiff] was subject to the ride sharing exclusion at the time of the accident." (*Id.*)

USAA further asserts that it did follow its policy and procedures when it investigated and initially declined coverage for Plaintiff's claim between April 14, 2020, and January 9, 2024, contrary to Plaintiff's assertions. (*Id.* at 6 (citing ECF No. 52-1 at 5–9 (sealed)).) USAA asserts that the following investigatory steps complied with its policies and procedures: (1) "Uber—through Progressive—communicated to USAA" that Plaintiff was participating in ride sharing activities during the night of the accident; (2) in order to verify this information, USAA contacted Plaintiff, who stated he was receiving orders for deliveries after the accident; and (3) "Uber—through Progressive—then informed USAA CIC that [Plaintiff] was in 'Phase 1' of their coverage, meaning the Uber application was turned on and Plaintiff was able to accept deliveries, but did not have an active order when the accident occurred . . . ." (*Id.* at 6–7.) USAA asserts Phase 1 status fell squarely within Plaintiff's USAA policy ride share exclusion. (*Id.* at 7.) Moreover, USAA argues that it was not required under California law, the Policy, or any of USAA's policies and procedures to request Plaintiff's Uber driving log. (*Id.*) In this case, USAA argues that there was no reason for the request prior to its declination considering it had received

13

Uber's written confirmation (through Progressive) that Plaintiff's status fell within the exclusion. (*Id.*)

Because it followed company procedure and policy when it initially declined coverage, USAA argues that *Colonial Life* is inapplicable as there is no need to prove regular business practices. (*Id.* at 9.) Moreover, USAA argues that the *Colonial Life* discovery sought would be unduly burdensome and disproportionate to the needs of the case. USAA claims that it has "no simple method of searching potentially thousands and thousands of *all* of its claim files for potentially responsive information." (*Id.* at 8.) Specifically, USAA has "no way to 'search' (either in an automated manner, through the use of keywords, or otherwise) all of USAA[]'s claims through any database based upon terms or topics[.]" (ECF No. 53-2 ¶ 4.) Plaintiff's request would therefore require a manual review of each and every claim file and take hundreds of hours, as USAA "does not organize or label claim files based on whether a given underinsured motorist bodily injury claim (or any type of claim in any state) by an insured was engaged in ride sharing activity in conjunction with a transportation network company," *e.g.*, Uber. (*Id.* ¶¶ 3, 5.) This review could take "multiple people many months at a minimum" and would be "extremely onerous, burdensome, and costly," and require individuals to be reassigned from their normal job responsibilities. (*Id.* ¶ 8.) USAA further contends that the claim files contain sensitive personal information and may contain medical records and privileged communications. (*Id.* ¶¶ 6, 7)

In response, Plaintiff argues that it only sent "targeted *Colonial Life* discovery" and "does not seek entire claim files, confidential information of any insured, nor any privileged information." (ECF No. 50 at 5–6.) For RFP No. 21 and Interrogatory No. 11, Plaintiff seeks only "the identification of insureds (and documents evidencing such identification in the event USAA [] argued that it was required to compile information) so that Plaintiff may determine the number of potentially relevant claims." (ECF No. 55 at 3.) This information, Plaintiff argues, could then lead to additional targeted discovery. (*Id.*) Plaintiff further argues that USAA did not even mention RFP No. 22 and

Interrogatory No. 12, which specifically seek complaints alleging USAA did not properly investigate ride-share application status before denying claims, which are not inherently privileged or confidential.  (*Id.*)

Plaintiff asserts that USAA's statements that it did everything right before denying Plaintiff's claim are "self-serving" as "its coverage determination was entirely wrong on an objective factual basis." (ECF No. 55 at 4.)  Plaintiff contends that the driver log is "the sole information determinative of coverage," and USAA repeatedly refused to request it from Uber, despite Plaintiff's repeated communications that he was not logged in to his Uber application at the time of the accident, until this lawsuit was filed.  (*Id.*)  Plaintiff further disputes USAA's claim of burden by arguing that its initial supporting declaration contains only conclusory assertions and no specifics, such as the type of database system USAA uses, what search capabilities are available, or why the task must be completed manually.  (*Id.* at 5.)

To his reply, Plaintiff attaches an expert declaration from an individual with "extensive experience relating to internal auditing at insurance companies" who "finds it highly implausible that USAA [] cannot easily query its database."  (*Id.* at 5–6.)  USAA filed an objection to Plaintiff's expert declaration and requested an opportunity to rebut it with supplemental briefing.  (ECF No. 56 at 2.)

Without obtaining permission, but in response to a communication from the Court regarding what additional information USAA should be prepared to provide at the upcoming hearing, USAA filed a supplemental declaration to support its assertion of burden.  (ECF Nos. 62, 63.)  Plaintiff objected to the unauthorized supplemental declaration.  (ECF No. 64.)[1]  Given the foregoing, the Court overrules the parties' objections to the supplemental declarations.  (ECF Nos. 56, 64.)  Although leave of Court is required for the filing of any surreply, as discussed during the hearing, the Court needed

---

[1]    After the hearing, at the direction of the Court, USAA filed three additional declarations.  (ECF Nos. 67, 78–80, 83.)

additional information to evaluate USAA's claim of burden and would have authorized the filing of both declarations. The declarations are accepted for the sole purpose of evaluating the pending Motion to Compel. With the foregoing background, the Court turns to the specific discovery requests at issue.

        1.   <u>RFP No. 21 and Interrogatory No. 11</u>

      After consideration of the foregoing, the Court finds that Plaintiff has established some minimal relevance to RFP No. 21 and Interrogatory No. 11, which go to the identification of other insureds with claims requiring a determination of whether the insured was engaged in ride sharing activity.

      In support of its bad faith claim, Plaintiff points to language from USAA's internal guideline entitled, "███████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████." (ECF No. 52-1 at 12 (emphasis added) (sealed).) Based in part on the foregoing, Plaintiff's position is that because Plaintiff believed he had logged out of the Uber Eats application, despite acknowledging that he was still receiving communications through the application after the accident, and because USAA only received indirect and insufficiently specific information that Plaintiff was logged in to the Uber Eats application at the time of the accident, USAA had the obligation to get the driver log from Uber before denying the claim. Plaintiff argues that the requested discovery will show that USAA "regularly failed to obtain the driver log when investigating disputed ride sharing activity[,]" even though obtaining it is required by USAA's internal guidelines and industry standards. (ECF No. 50 at 2–4.) Plaintiff further argues that evidence of USAA's widespread failure to obtain logs in claims where there is a dispute as to whether the insured was logged in to a ridesharing application at the time of the accident would go to pattern and practice and would support a bad faith claim and punitive damages.

In contrast, USAA's position is that because Plaintiff was equivocal about being logged out at the time of the accident and because USAA confirmed with Uber (albeit indirectly, through Progressive) that Plaintiff was logged in to the Uber Eats application at the time of the accident, there was no need to obtain the log before denying the claim. USAA maintains in its opposition that it was not required to request Plaintiff's Uber driving log under California law, the Policy, or under any of USAA's policies.  (ECF No. 53 at 7.)

Simply because an insurer is alleged to have improperly denied coverage in one case does not entitle an insured to go on a fishing expedition of discovery into unrelated claim files in the blind hope of finding evidence of a pattern and practice of misconduct.  *See, e.g.*, *J & M Assocs., Inc.*, 2008 WL 638137, at *5 (finding *Colonial Life* discovery relevant only where the requests "seek information pertaining to the same type of policy at issue"); *Dobro v. Allstate Ins. Co.*, No. 16CV1197-AJB (BLM), 2016 WL 4595149, at *6 (S.D. Cal. Sept. 2, 2016) (noting that *Colonial Life* discovery regarding other claims is relevant, when properly limited to the facts, insurance policy, and claims at issue in the case); *Shirley v. Allstate Ins. Co.*, No. 18CV994 AJB (BGS), 2019 WL 3208000, at *7–9 (S.D. Cal. July 16, 2019) (finding the plaintiff's *Colonial Life* discovery requests impermissibly vague and overbroad where they "could apply to every claim ever handled by Allstate" rather than claims similar to the plaintiff).

In this case, though, it is the very fact that USAA maintains that it did not have an obligation to obtain the logs that suggests that the failure to do so in this case may not be isolated.  To be clear, the Court is not making a determination as to whether or not USAA was required to, or should have, obtained the logs in this case.  The Court merely acknowledges that Plaintiff has an argument, which he supports with language from USAA's internal guidelines, that USAA had such an obligation.  And, in part, because USAA maintains that it had no such obligation, the Court recognizes that, if Plaintiff has

23-cv-01221-BAS-JLB

the prevailing argument on this point, evidence of USAA taking this position with respect to other, similarly situated insureds, could have some, at least minimal, relevance.[2]

However, based on the record before it, the Court finds that these discovery requests are not proportional to the needs of the case, and USAA has established that responding to the discovery would be unduly burdensome. Although Plaintiff can surmise to the contrary,[3] USAA maintains, and has provided declarations under penalty of perjury attesting, that "[t]here is no way to 'search' (either in an automated manner, through the use of keywords, or otherwise) all of USAA['s] claims through any database based upon terms or topics such as suggested in Plaintiff's motion to compel and has been requested by Plaintiff[.]" (ECF No. 63 ¶ 5.) USAA further maintains that "[t]o determine if a given claim involved an insured engaged in ride sharing activity in conjunction with a transportation network company or any of the similar information that Plaintiff now seeks, USAA [] personnel would have to manually (i.e. physically) review each and every claim file in two separate claim systems that has been presented and opened by USAA [] over

---

[2]    Of course, with these discovery requests, Plaintiff does not directly seek evidence that USAA failed to obtain driver logs in the face of disputes with other insureds as to ride-sharing status. Rather, Plaintiff seeks the identity of all insureds with claims where ride-sharing status had to be determined, regardless of whether the status was disputed or undisputed, regardless of what evidence of driver status USAA relied upon. If USAA were compelled to produce this information, Plaintiff would presumably seek leave to contact those claimants to determine whether any of them disputed their ride-sharing status and whether USAA obtained the driver logs.

[3]    In his declaration, Plaintiff's expert, Elliott S. Flood, sets forth his extensive experience in the insurance industry and states, based upon his familiarity with the electronic claim file storage systems at other insurance companies, that he finds it "highly implausible that USAA cannot easily query its database to produce a list of policies issued to a ride-share driver." (ECF No. 55-1 ¶ 3.) However, Mr. Flood does not purport to have actual knowledge of USAA's claim file system or its databases. *See Dobro*, 2016 WL 4595149, at *7 ("Although Plaintiffs question Defendant's purported inability to search its databases for relevant claims, the unrefuted evidence establishes that Defendant does not have the capability to search for claim files containing the six factors identified by Plaintiff to limit the discovery request to the facts of this case.").

18

the five year period." (*Id.* ¶ 6.)  During the five-year period at issue, USAA opened (or re-opened) 63,016 auto claim files for California claims, and USAA would have to open and physically review each claim file to determine if the claim involved rideshare activity." (*Id.* ¶ 7.)  USAA estimates that it would take approximately one hour of employee time per file to review, which would require approximately thirty reviewers a full year to complete. (*Id.* ¶ 10.)

During the hearing, the Court inquired about the type of information maintained by USAA for underwriting purposes concerning UM/UIM coverage and ridesharing activity to see if the requested information could be obtained from information stored elsewhere for non-claims-related purposes.  In Matthew Johnson's supplemental declaration, USAA states ███████████████████████████████████████████ ██████████████████████████████████████████████████." (ECF No. 83-2 ¶ 7 (sealed).)  The Court further inquired about the type of information that USAA provides to the Insurance Services Office ("ISO") and whether responsive discovery can be obtained from the ISO or from data USAA gathers to provide to the ISO. In Timothy Strobel's supplemental declaration, USAA attests that ██████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████. (ECF No. 83-3 ¶ 8 (sealed).)  USAA further represents that it ████████████ ██████████████████████████████████████████████████████████ ██████████. (*Id.* ¶¶ 6–7 (sealed).)

Based on the foregoing, despite the minimal relevance established by Plaintiff, the Court **DENIES** without prejudice[4] Plaintiff's Motion to Compel responses to RFP No. 21

---

[4]    The Court will re-visit these requests only if Plaintiff subsequently receives information that directly refutes USAA's statements on the record regarding the burden of producing the requested documents and information.  The Court would also entertain a motion to compel a very narrow version of the requests to the extent Plaintiff learns additional information through discovery produced in response to RFP No. 22 and

and Interrogatory No. 11.  Considering both the value of the information sought and the burden entailed in identifying and producing responsive material, the Court find these discovery requests to be disproportionate to the needs of the case.

### 2.    RFP No. 22 and Interrogatory No. 12

With respect to RFP No. 22 and Interrogatory No. 12, seeking discovery regarding complaints from California[5] insureds that USAA failed to adequately investigate whether the insureds were engaged in ride sharing activity, the Court finds the requested information to be relevant.  "The linchpin of a bad faith claim is that the denial of coverage was unreasonable."  *McCoy*, 171 Cal. App. 4th at 793.  "Before an insurer can be found to have acted in bad faith for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted *unreasonably or without proper cause*."  *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1072 (2007), *as modified on denial of reh'g* (Apr. 20, 2007).  "[A]n insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability."  *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006), *as modified on denial of reh'g* (June 16, 2006).  "The insurer's decision must be a conscious and deliberate act to deny the insured the benefits due under the contract."  *James River Ins. Co. v. Andrade & Assocs.*, No. SA CV 10-00318 DOC (ANx), 2010 WL 11595833, at *4 (C.D. Cal. Aug. 3, 2010) (citing *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001), *as modified on denial of reh'g* (July 30, 2001)).

---

Interrogatory No. 12.  The Court will not, however, reopen fact discovery for the purpose of allowing Plaintiff to depose USAA's declarants on this issue.  (*See* ECF No. 72 at 6–7.)

[5]    In his Supplemental Reply, Plaintiff stated he was willing to further limit his requests to California, which the Court accepts as appropriate.  (ECF No. 72 at 5 ("In the instant case, Plaintiff has limited his requests solely to those claims similarly situated to Plaintiff, i.e., underinsured motorists where ride share activity is disputed.  Plaintiff was further willing to limit the scope to California claims."); *see also* ECF No. 50 at 9.)

A key question in this case is whether it was reasonable for USAA to rely on the information provided by Uber through Progressive despite not requesting the driver log. The issue of whether this particular concern had been raised before is therefore relevant to determining whether USAA acted in bad faith, as well as to punitive damages. *See* Cal. Civ. Code § 3294(a) (punitive damages must be based on a showing of "oppression, fraud, or malice"); *Lunsford v. Am. Guarantee & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (noting that punitive damages may be awarded under California law "when [an] insurer breaches the covenant of good faith and fair dealing and is guilty of oppression, fraud or malice") (citation and internal quotation marks omitted).

In its opposition, USAA did not specifically argue against or address the relevance of these discovery requests. Nor did USAA address the burden of producing the requested information. Because USAA did not provide sufficient information in its opposition for the Court to assess its burden of production, the Court requested a supplemental declaration identifying all locations where USAA maintains complaints, letters, emails, demands, claims, lawsuits, and/or demands for arbitration received from insureds and addressing the burden associated with producing such documents. (ECF No. 67.)

USAA's supplemental declaration from Joseph Hughes addresses the handling of complaints by USAA members and third parties, but not formal litigation matters. USAA represents that it has a Member Advocacy Team that ███████████████████████. (ECF No. 83-1 ¶ 4 (sealed).) The Member Advocacy Team ██████████████████████████████████████████████████████████████████████. (*Id.* ¶¶ 5–6 (sealed).) USAA represents that ██████████████████████████████████████████████████████████████████

1    ██████████████████." (*Id.* ¶ 5 (sealed).) █████████████████████

2    ████████████████████████████████████████████████████████

3    █████████████████. (*Id.* ¶ 7 n.1 (sealed).)

4        Although the Hughes declaration sets forth the limitations of an electronic search of

5    the ██████████████████████ for responsive material, USAA does not, in this

6    declaration or elsewhere, address the burden of conducting a complaint-by-complaint

7    review. No estimate of the universe of complaints is provided to the Court, nor is an

8    estimate provided of the resources necessary to conduct such a review. Furthermore,

9    USAA explains that ████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████. (ECF No. 83-1

12   ¶ 7 n.1 (sealed).) USAA has not addressed why it could not or should not be required to

13   do so.

14       Mr. Hughes' description of the role and record-keeping of the Member Advocacy

15   Team does not apply to "███████████████," which Mr. Hughes notes are "███████."

16   (ECF No. 83-1 ¶ 4 (sealed).) The burden of responding to RFP No. 22 and Interrogatory

17   No. 12 with respect to the seeking of discovery of lawsuits and demands for arbitration is

18   not addressed at all in the declarations submitted by USAA. Therefore, USAA has not met

19   its burden to establish that responding to the discovery would be unduly burdensome.

20       Accordingly, the Court **GRANTS** Plaintiff's Motion to Compel a response to

21   RFP No. 22 and Interrogatory No. 12, as limited to California claims. All personal or

22   privileged information of the insureds and third parties shall be redacted.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**IV.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel.  The Court **DENIES** without prejudice Plaintiff's Motion to Compel responses to RFP No. 21 and Interrogatory No. 11.  However, the Court **GRANTS** Plaintiff's Motion to Compel responses to RFP No. 22 and Interrogatory No. 12. Defendant shall produce all non-privileged documents responsive to RFP No. 22 and Interrogatory No. 12 within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

Dated:  August 15, 2025

Hon. Jill L. Burkhardt
United States Magistrate Judge

23-cv-01221-BAS-JLB