Shervin Golshani, Esq. (SBN 297320)
Christopher J. Lee, Esq. (SBN 309193)
**GOLSHANI LEE LLP**
9404 Genesee Avenue, Suite 120
La Jolla, CA 92037
Telephone: (858) 360-6454
golshani@golshanilee.com
lee@golshanilee.com

Will Lemkul, Esq. (SBN 219061)
Matthew Yarling, Esq. (SBN 190774)
Christian Barton, Esq. (SBN 303738)
**MORRIS, SULLIVAN, LEMKUL & TURTZO, LLP**
10680 Treena Street, Suite 100
San Diego, CA 92131
lemkul@morrissullivanlaw.com
yarling@morrisullivanlaw.com
barton@morrissullivanlaw.com

*Attorneys for Plaintiff,*
CHRISTOPHER VOPATEK

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER VOPATEK, an individual; <br><br> Plaintiff, <br><br> v. <br><br> USAA CASUALTY INSURANCE COMPANY, a Texas corporation; <br><br> Defendant. | Case No.: 23-cv-01221-BAS-JLB <br><br> **PLAINTIFF CHRISTOPHER VOPATEK'S MOTION TO COMPEL DEFENDANT USAA CASUALTY INSURANCE COMPANY'S RESPONSES TO WRITTEN DISCOVERY** |

Pursuant to Fed. R. Civ. P. 37, Local Civil Rule 26.1(e), Judge Burkhardt's Civil Chambers Rules §§ V.B, C, and the Minute Order providing leave for Plaintiff Christopher Vopatek ("Plaintiff") to file this Motion to Compel [ECF No. 88], Plaintiff hereby moves to compel Defendant USAA Casualty Insurance Company ("USAA CIC") to respond to (1) Plaintiff's Requests for Admission Nos. 18, 19, and 21; (2) Plaintiff's Interrogatories Nos. 14-19; and (3) Plaintiff's Requests for Production Nos. 32-47.

## I.   INTRODUCTION

USAA CIC has refused to provide responses to written discovery on grounds *Colonial Life* discovery is irrelevant and unavailable to Plaintiff, and that any such discovery is overly burdensome. Unlike its opposition to Plaintiff's prior Motion to Compel, USAA CIC has failed to provide information related to burden. Nearly all the discovery at issue is limited specifically to adjusters Brian Taylor and Henry Hayama from 2019-2020. At the informal discovery conference ("IDC"), the Court indicated USAA CIC should provide the number of claims handled by each adjuster to permit a proper evaluation of burden. For example, if Taylor only handled 5 claims, a file-by-file review would not be burdensome, unlike where 60,000+ files were involved. Rather than provide this figure, USAA CIC asserts even obtaining this figure would be burdensome.

The remaining discovery at issue involves three (3) Requests for Admissions regarding whether USAA CIC received complaints regarding investigation of ride-share, and whether it had received a driver log from any TNC or Uber prior to denying Plaintiff's claim. At the IDC, the Court suggested USAA CIC inquire from its adjusters and/or managers whether such logs were received via a mass communication. Yet USAA CIC did not do so. Rather, USAA CIC's counsel vaguely claims it made "further inquiries as to whether it can reasonably obtain reliable information," without explaining what that means or what this position is based on (claiming this would be "discovery on discovery"). USAA CIC claims it cannot send a mass inquiry because many adjusters may have resigned or been terminated since 2020 and because complaints and driver logs would be located in claims files, necessitating file-by-file review.

2

## II. STATEMENT OF FACTS

### A. The Incident

On April 4, 2020, Plaintiff completed a final Uber Eats delivery, logged out of the app, and began driving home when he was struck in a near head-on collision by a drunk driver. (ECF No. 1 at 5:26-6:15.) The drunk driver's carrier tendered its $15,000 limit, and Plaintiff sought underinsured motorist coverage from USAA CIC. (*Id*. at 6:16-25.) Plaintiff consistently maintained he had logged out before the accident, though he later acknowledged receiving post-accident "pings" he could not explain. (*Id*. at 7:21-22.)

### B. USAA CIC's Failure to Investigate

Plaintiff gave a recorded statement on April 6, 2020, but USAA CIC never asked about rideshare activity, never took an examination under oath, and never contacted Uber. Instead, USAA CIC relied on a vague Progressive email stating Uber had placed Plaintiff in "Period 1" without any supporting details. USAA denied coverage on May 19, 2020—before receiving even this limited information the next day. Despite repeated requests from Plaintiff and his counsel, USAA CIC never attempted to obtain the Uber driver log, dismissing inquiries as "very difficult" to pursue.

### C. Irrefutable Evidence Establishing Coverage Owed

Only after this lawsuit did USAA CIC obtain the Uber driver log, which confirmed Plaintiff was not logged in at the time of the accident and coverage was owed.

### D. Discovery at Issue

Plaintiff issued highly targeted and narrowly tailored *Colonial Life* discovery in the form of Interrogatories Nos. 14-19 and Requests for Production ("RFP") Nos. 32-47. (Golshani Decl., ¶¶ 2-3, Ex.'s 1-2.) Plaintiff's Interrogatories Nos. 14-19 and RFPs Nos. 32-47 involve *Colonial Life* discovery specifically limited to adjusters Brian Taylor and Henry Hayama respectively, who each handled Plaintiff's claim directly. The requests are further limited only to the two-year period from January 1, 2019 to December 31, 2020. Plaintiff also issued Requests for Admissions Nos. 18, 19, and 21, which ask whether USAA CIC received complaints alleging it denied claims based on

3

ride-share exclusions without investigating, and whether it had received a driver log from any TNC or Uber prior to denying Plaintiff's claim. (Golshani Decl., ¶ 4, Ex. 3.)

### E. Compliance with CivLR 26.1

The parties met and conferred as required under CivLR 26.1, submitted a Joint Discovery Statement to the Court, and attended an informal discovery conference on August 11, 2025. (Golshani Decl., ¶ 5.) The parties further met and conferred and were not able to resolve their dispute. (*Id.*) At the Court's direction, another Joint Discovery Statement was submitted on August 28, 2025. The Court issued a minute order allowing Plaintiff to file this Motion to Compel. (*Id.*)

## III. LEGAL STANDARD

Under the Federal Rules, the scope of discovery is broad. Relevance for discovery purposes is construed liberally – information need not be admissible at trial, so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; see *Colonial Life & Accident Ins. Co. v. Superior Court*, 31 Cal.3d 785, 790 (1982)(describing relevance of pattern and practice evidence). Rule 26(b)(1) also requires consideration of proportionality factors such as the importance of the issues, the amount in controversy, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of producing it outweighs its likely benefit. The burden lies with the objecting party to show why discovery should be denied.

## IV. LEGAL ARGUMENT

### A. Pattern and Practice Discovery is Highly Relevant and Authorized

It is well-established under California law that an insurer's wider business practices and handling of similar claims are not only discoverable but often directly relevant to a bad faith action. *Colonial Life & Accident Ins. Co. v. Superior Court*, 31 Cal.3d 785 (1982) is the seminal authority on this point. In *Colonial Life*, the plaintiff sought discovery of all claim files handled by the same adjuster who handled her claim to determine if there was a pattern of unfair settlement practices. The insurer objected that those other claims were irrelevant. The trial court ordered production, and the insurer

4

petitioned for a writ. The California Supreme Court flatly rejected the insurer's relevance objection as "patently meritless." *Id.* at 790. The Court held the requested discovery was "directly relevant" for at least three reasons:

<u>Circumstantial Proof of General Business Practice:</u> The Court recognized that direct evidence of an insurer's malicious intent or knowledge can be hard to obtain. Therefore, a plaintiff is often allowed to rely on circumstantial evidence that the insurer engaged in similar misconduct frequently enough to constitute a general business practice. *Id.* at 791.

<u>Punitive Damages – Other Acts Show Conscious Disregard:</u> Other instances of unfair practices by the insurer are "highly relevant" to the plaintiff's punitive damages claim. *Id.* A pattern of similar unfair denials can demonstrate the insurer's conduct was willful or in conscious disregard of its insureds' rights, supporting malice or oppression. The *Colonial Life* court cited *Neal v. Farmers Ins. Exchange*, 21 Cal.3d 910, 922 (1978) which holds that a habitual practice of denying valid claims can establish the reckless indifference necessary for punitive damages. The importance of *Colonial Life* discovery has only intensified following the U.S. Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003) and the California Supreme Court's decision in *Johnson v. Ford Motor Co.*, 35 Cal.4th 1191 (2005). Both courts emphasized that the "reprehensibility" of a defendant's conduct—the most important factor in assessing punitive damages—depends on whether the conduct was repeated or isolated. Repeated misconduct justifies greater punishment, and only *Colonial Life* discovery allows plaintiffs to make this showing persuasively.

<u>Ratification/Authorization by Insurer's Management:</u> *Colonial Life* noted that repeated unfair dealings in other cases could suggest those practices were ratified or authorized by the insurer – bolstering a punitive damages theory. *Id.* at 792, n.9. A company-wide practice of denying ride-share related claims (Period 1) without obtaining the driver log would tend to show USAA has ratified such denials as official policy, supporting punitive exposure.

In light of these principles, courts routinely permit discovery of an insurer's "pattern and practice." *Colonial Life* remains controlling authority even after changes in bad faith law precluding private actions under Insurance Code §790.03. Indeed, subsequent decisions have reaffirmed a plaintiff's right to obtain such discovery in insurance bad faith cases. For example, in *Moore v. American United Life Ins. Co.*, 150 Cal.App.3d 610, 621 (1984), the plaintiff introduced evidence of two other disability claims to show a pattern of unreasonable claims handling. The jury returned a bad faith verdict with punitive damages. *Id.* at 616. On appeal, the insurer argued the evidence should have been excluded as irrelevant and dissimilar. *Id.* at 625. Citing *Colonial Life*, the appellate court held the evidence of the two other claims was relevant to establish the insurer's general business practice. *Id.* at 624-625. The court rejected the argument that any danger of undue prejudice outweighed probative value – underscoring that such pattern evidence is highly probative and its value is not substantially outweighed by prejudice in the context of a bad faith case. *Id.* at 627-628. The $2.5 million punitive award was upheld, with the court emphasizing that the insurer's conduct was reprehensible in part because it affected numerous insureds through a "firmly grounded" company policy. *Id.* at 637.

Here, the relevance of the requested discovery is manifest. Plaintiff alleges USAA CIC denied his claim by invoking the ride-share exclusion without a proper investigation. How USAA CIC has handled other claims involving disputed ride share activity is directly probative of whether USAA CIC's conduct toward Plaintiff was a one-off mistake or part of a deliberate pattern. If USAA CIC consistently fails to obtain the driver log where ride sharing activity is in dispute, that would indicate a company policy or practice of failing to investigate – supporting Plaintiff's claim. It would also show USAA CIC knows the financial harm this causes to insureds yet persists, evidencing the malice or conscious disregard required for punitive damages. The information is highly relevant to USAA CIC's state of mind and the reasonableness of its claim handling. This is central to Plaintiff's case, not a peripheral issue. The discovery

goes to the heart of Plaintiff's bad faith allegations and is squarely within the broad scope of relevance under Rule 26(b)(1).

### B. Proportionality and Burden: The Requests are Reasonably Tailored

Plaintiff's *Colonial Life* discovery at issue, Interrogatories Nos. 14-19 and RFPs Nos. 32-47, is narrowly tailored and limited specifically to adjusters Brian Taylor and Henry Hayama who each directly handled Plaintiff's claim. The requests are further limited to the two-year period encompassing 2019 and 2020.

In *Van Duyn*, the plaintiff sought contact information of other insureds whose claims were handled by the same adjusters. *Van Duyn v. Am. Sec. Ins. Co.*, No. CV 08-5748-GW(CTX), 2009 WL 10672575, at *1 (C.D. Cal. Apr. 14, 2009). The insurer objected, but the court was not persuaded that a limited search and production would impose an undue burden. Balancing the need for relevant information against the burden, the *Van Duyn* court ordered the insurer to conduct a search of its databases and produce an initial sampling of other similar claims over a four-year period. *Id.* at *4. Even when an insurer claims numerous files are involved, the solution is to tailor or phase the discovery, not to deny it outright.

Here, USAA CIC objected primarily on grounds the requests were overly burdensome and required "manual file-by-file" review. USAA CIC has rehashed its arguments set forth in opposition to Plaintiff's prior Motion to Compel. (ECF No. 50.) There, however, Plaintiff's requests were broad and encompassed all claims handled by USAA CIC over a five (5) year period. USAA CIC submitted a declaration from Nicole Holgate stating 63,016 claims files would have to be manually reviewed to provide a response to that discovery. (ECF No. 63.) USAA CIC later claimed de-duplication reduced this figure to just 18,017 total claims files. (ECF No. 90.)

Plaintiff's discovery requests at issue in this motion are narrowly tailored and explicitly limited only to individual adjusters Brian Taylor and Henry Hayama. The requests are further limited to just a two (2) year period of 2019-2020. At the informal discovery conference attended by the parties, the Court advised that the prior information

1  regarding USAA CIC's assertions of burden was not helpful in evaluating burden as to
2  these specific requests. The Court directed USAA CIC's counsel to determine how many
3  claims Brian Taylor and Henry Hayama each handled so that burden could be properly
4  evaluated. As the Court pointed out, if Taylor only handled five claims, for example, the
5  purported burden of a file-by-file review would be significantly less than the burden for
6  a file-by-file review of over sixty thousand claims.

       During the parties' meet and confer, USAA CIC's counsel advised he did not obtain the number of claims each adjuster handled and that doing so would itself be burdensome. Despite being able to quickly obtain the total claim figures to support its previously submitted declarations as to burden, USAA CIC claims it cannot determine how many claims Brian Taylor or Henry Hayama individually handled in the two-year period from 2019-2020. USAA CIC has not even provided the total claims limited to that two-year period along with the number of claims representatives and adjusters they employed, which could potentially provide some basic estimates as to Taylor and Hayama's claims file loads.

       USAA CIC's Nicole Holgate testified she obtained the number of claims, 63,016, from the data analytics team and did not retrieve that information herself. (Golshani Decl., ¶ 6, Ex. 4 at 144:11-145:14.) She testified she did not know how the data analytics team got its information. (*Id.*) She does not know who leads the data analytics team (*Id.* at 145:24-146:1.) When asked if she ever asked the data analytics team if they could search the 63,000 claim files, Ms. Holgate says no. (*Id.* at 147:2-6.) Why has USAA CIC not asked the data analytics team for the number of files handled by Taylor and Hayama? The burden lies with the objecting party to show why discovery should be denied, and USAA CIC has provided no evidence to support any alleged burden here.

       Taylor testified that, at any given time, he handled more than 50 claims simultaneously but did not know if he handled more than 100. (Golshani Decl., ¶ 7, Ex. 5 at 22:8-21.) Hayama testified that, at any given time, including in 2022 when he handled Mr. Vopatek's claim, he handled "anywhere from 120 to 180" claims

8

1  simultaneously. (Golshani Decl., ¶ 8, Ex. 6 at 71:6-15.) Hayama further testified that in 2022, he handled "minimal" claims involving ride share activity, which he defined as "less than 20." (Golshani Decl., ¶ 8, Ex. 6 at 71:16-23.) These figures are miniscule relative to the 63,018 claims files USAA CIC previously alleged were overly burdensome to search. In addition, counsel conceded before this Court that the claims diary was searchable, indicating each claim file could be searched for ride share activity within minutes and skipped if no hits result. There is no justified and verifiable basis on which USAA CIC can continue to evade simple discovery requests to which Plaintiff has a right.

Similarly, USAA CIC has failed to provide any evidence that responding to Plaintiff's RFAs Nos. 18, 19, or 21 are overly burdensome. USAA CIC has not provided a response as to RFA 18 and no further comments. USAA CIC maintains its "burdensome" objections as to RFA Nos. 19 and 21 on grounds it cannot confirm with certainty that a driver log had ever been received prior to May 19, 2020. At the informal discovery conference, the Court suggested USAA CIC inquire from its adjusters and/or managers whether such logs were received via a mass communication. During the parties' meet and confer, USAA CIC's counsel vaguely claimed it made some inquiries if obtaining the information was possible, and claimed it was not because many adjusters may have resigned or been terminated since 2020 and because complaints and driver logs would be located in claims files, necessitating file-by-file review.

USAA has not demonstrated disproportionality nor burden. Given the high relevance of the information and the extremely limited scope, the Court should overrule USAA CIC's objections and order a response to Plaintiff's written discovery.

### C. The Parties' Joint Discovery Plan is Irrelevant

USAA CIC argues that Plaintiff's discovery should be barred because it exceeds the scope of the parties' Joint Discovery Plan filed September 6, 2023. (ECF No. 11.) Yet USAA CIC cites no authority supporting the notion that discovery is strictly confined to the Plan. At the time the Plan was submitted, key materials, including USAA CIC's own claims file and the

Uber driver log confirming Plaintiff's coverage (produced October 20, 2023), had not even been disclosed.

Plaintiff's targeted discovery requests were propounded on December 12, 2023, after the October 23, 2023 ENE and in direct response to issues raised by USAA CIC's belated production. USAA CIC then waited until March 19, 2025, to produce internal policies, and now refuses to comply with this Court's August 15, 2025 order. Its suggestion that Plaintiff should have foreseen USAA CIC's bad faith conduct at the time of the Joint Discovery Plan is meritless. Nothing in the Plan forecloses relevant, proportional discovery, and the Court has already found the requests proper. By USAA CIC's logic, its own dispositive motion on bad faith and punitive damages, topics it failed to identify in the Plan, would likewise be barred.

## V. CONCLUSION

For all of these reasons, Plaintiff respectfully requests that the Court compel USAA CIC to provide the discovery at issue. Despite being given a clear opportunity and multiple meet and confer efforts, USAA CIC has failed to substantiate its claims of burden and has instead engaged in a pattern of delay and evasion. Its refusal to produce narrowly tailored information has forced Plaintiff, and now the Court, to expend unnecessary time and resources. USAA CIC should not be permitted to benefit from such obstruction, and an order compelling compliance is warranted.

DATED: September 11, 2025            **GOLSHANI LEE LLP**

By:   */s/ Shervin Golshani*
      Shervin Golshani, Esq.
      Christopher J. Lee, Esq.

      and

      Will Lemkul, Esq.
      Matthew Yarling, Esq.
      Christian Barton, Esq.
      Attorneys for Plaintiff
      CHRISTOPHER VOPATEK